FILED
2008 Jul-14  AM 11:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **DEBRA SEYMOUR,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **6:07-cv-498-UWC** |
| **HEALTH CARE GROUP, INC.,** ) | |
| **d/b/a MOUNT ROYAL TOWERS,** ) | |
| ) | |
| Defendant  . ) | |
| ) | |

**MEMORANDUM OPINION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In the present action Plaintiff, Debra Seymour, who suffers from breast cancer, asserts Family Medical Leave Act claims, 29 U.S.C. § 2601, *et seq*, against Defendant Health Care Group, Incorporated d/b/a Mount Royal Towers (hereinafter "Mount Royal"). Presently before the Court is Mount Royal's motion for summary judgment. (Doc. 30.) For the reasons set forth below, the Court finds that Mount Royal's motion is due to be granted, in part, and denied, in part.

## I. FACTS [1]

Seymour began working at Mount Royal in July 2005 as an LPN. During her tenure, she received several raises and a promotion. Seymour found a lump in her breast sometime in 2005, but was told that she had a thyroid condition. Approximately one year later, in July 2006, Seymour became more concerned about the lump when it turned into a mass. Seymour's then immediate supervisor, Shonna Carpenter, testified that she noticed Seymour becoming weak, nauseous, experiencing shortness of breath. Indeed, prior to this time, Seymour had been a reliable employee, but had recently missed work. Because of the changes she noticed, Carpenter encouraged Seymour to seek medical treatment.

In September, Seymour told Carpenter about the lump and requested three vacation days in October to seek medical treatment for the problem and obtain some routine medical care. Carpenter approved Seymour's request and later had a conversation with the Interim Director of Nursing, Barbara Lail about Seymour. (Doc. 32, Pl.'s Ex. G, Carpenter Dep. at 31-35.) Carpenter testified she told Lail that Seymour had been out sick and that she appeared to be "seriously ill." (Pl.'s Ex. G, Carpenter Dep. at 27.) Lail expressed disbelief. (*Id*.) Either during that conversation or sometime later, Lail questioned how a lump correlated to nausea and vomiting. (Pl.'s Ex. G, Carpenter Dep.

---

[1] Also before the Court is Mount Royal's Motion to Strike Plaintiff's Evidentiary Submission, in which Mount Royal asks this Court to strike all inadmissible evidence found in Seymour's evidentiary submission. (Doc. 34.) Because the Court did not rely on inadmissible portions of the evidentiary submissions, Mount Royal's motion is moot.

at 31.)  Shortly thereafter, Carpenter left Mount Royal. [2]

As the days approached for Seymour's scheduled time off, she spoke with Lail who, as the Director of Nursing over multiple facilities, had temporarily replaced Carpenter.  Seymour wanted to confirm the scheduled days off that Carpenter had approved prior to her departure.  According to Seymour, Lail informed Seymour that she could not take time off because Mount Royal was understaffed.  (Doc. 30, Def's Ex. B, Seymour Dep Vol. II at 9- 13.)

Brandi Tucker, another Mount Royal employee, testified that she was present when Seymour mentioned the lump to Lail and noted she was planning to take a few days off.  (Doc. 32, Pl.'s Ex. H, Tucker Dep. at 55-57.)  According to Tucker, Lail responded that the lump was probably nothing, then walked away.  (*Id*.)

Around this same time, Seymour visited the administration office to obtain a FMLA leave form.  Lail, who was standing behind Seymour, took the form and reminded her about the staffing problems.  Seymour testified that she told Lail about the breast mass and the necessity for having the matter checked out by a physician.  (Def's Ex. B, Seymour Dep. Vol. II at 13.)  Lail responded that Seymour needed to get back to work. (*Id*.) [3]

---

[2] Although Lail denies Carpenter's account of their conversation, at this juncture the Court must view the facts in the light most favorable to Seymour.  *DeJulio v. Georgia*, 276 F.3d 1244, 1258 (11th Cir. 2001) (noting that on a motion for summary judgment, the Court must view all the facts in the light most favorable to the non-movant.)

[3] Lail denies Seymour's account of this encounter.

In October, Seymour used her vacation time to seek medical treatment, including a dental examination and a physical examination. During this time, her treating physician referred Seymour for a mammogram because of the mass the physician detected.

Several days later, Seymour returned to work and an incident arose involving a kitchen worker who experienced a diabetic episode. According to Seymour, the woman was "going out of it," while Seymour measured the woman's blood sugar, which . (Def's Ex. B, Seymour Dep. Vol. I at 70-71.) The blood sugar reading was 350. Seymour testified that without medical attention, the woman might have suffered a stroke or a seizure. After the woman requested that Seymour administer an insulin injection, she took insulin from Mount Royal stock and did as requested. (*Id*. at 70-72.) She did not call 911 because another employee told her that Lail had said the employees should handle the matter and get back to work. (*Id*. at 73-75.) Ultimately, the co-worker was able to return to her work duties later that same day.

Andy Clements, the Executive Director of Mount Royal, ultimately recommended terminating Seymour for unsatisfactory work performance, violation of company policies, and violation of safety rules because she injected the employee without a physician's approval. The corporate office accepted his recommendation and Seymour was terminated shortly after the insulin incident.

Although Clements claims he was not aware of Seymour's health issues or her need for time off until after her termination, Carpenter testified that Clements was present

when she and Lail spoke about the correlation between Seymour's lump and the nausea/vomiting.  (Pl.'s Ex. G, Carpenter Dep. at 31-32.)  Carpenter is not certain Clements overheard the conversation, but during her tenure (and before the termination) she mentioned the conversation to him and commented that Lail's response to the matter was "cold."  (*Id*.)

After her termination, Seymour underwent surgery and was officially diagnosed with breast cancer.

Based upon these events, Seymour asserts FMLA interference and retaliation claims.

## II. ANALYSIS

### A.  *FMLA Interference Claim*

Pursuant to the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  28 U.S.C. § 2615(a).  To establish an FMLA interference claim, an employee must demonstrate by a preponderance of the evidence that the she was entitled to the benefit allegedly denied. *Strickland v. Waterworks & Sewer Board of the City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir. 2001).  Mount Royal argues that Seymour was not entitled to FMLA benefits because she does not satisfy the coverage requirements under the statute.  Specifically, according to Mount Royal, Seymour did not have a "serious health condition" at the time she asked for the FMLA forms because she had not sought treatment for her condition

and she had scheduled only routine examinations for the days she planned to take off from work.

To qualify for FMLA benefits, an employee must suffer from a "serious health condition that makes the employee unable to perform the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The regulations define a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves" in-patient care or continuing treatment by a health care provider. 20 C.F.R. § 825.114(a). "[C]ontinuing treatment by a healthcare provider" includes:

> (1) "two or more treatments by a healthcare provider" and
>
> (2) "[t]reatment by a health care provider on at least one occasion which results in a regimen of continuing treatment."

20 C.F.R. § 825.114(a)(2). While treatment for purposes of the FMLA does not include "routine physical examinations," treatment does "include[] (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition," 20 C.F.R. § 825.114(b). Because Seymour had scheduled purportedly routine examinations and had not yet visited a health care provider at the time she requested the FMLA forms, Mount Royal argues that she cannot establish she was undergoing "treatment" for a "serious health condition."

The Court disagrees for two reasons. First, while Seymour had planned to undergo dental and physical examinations on her days off, she has presented sufficient evidence

that she desired a physical examination for more than routine purposes.  Indeed, she testified that she informed Lail that the requested days off were needed to determine the cause of the breast mass.  (Doc. 30, Def's Ex. B, Seymour Dep. Vol. II at 13.)  Another employee, Brandi Tucker, also overheard Seymour mention she needed time off to seek medical evaluation of the breast mass.  (Doc. 32, Pl.'s Ex. H, Tucker Dep. at 55-57.)  Thus, Mount Royal is not entitled to summary judgment on the issue of whether Seymour sought time off to seek routine medical treatment.

Second, although Seymour's "serious health condition" had not yet been diagnosed, there is little doubt that she had cancer when she requested the FMLA forms.  Not only did she have a mass in her breast, but she was also exhibiting signs of "serious illness."  (Pl.'s Ex. G, Carpenter Dep. at 27.)  Seymour scheduled an appointment with her physician and, shortly thereafter, she was diagnosed with cancer.  Inasmuch as the regulations specify that "treatment . . . includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition," the Court finds that Plaintiff met the requirements under the statute.  *See* 20 C.F.R. § 825.114(b).

To find otherwise would allow employers to routinely - - and with impunity - - deny all employees an opportunity to complete FMLA forms, in hopes that some or many of the employees would ultimately be unable to establish they suffered from a "serious health condition."  Such a result would be inconsistent with the "twin purposes" behind the statute, namely "balanc[ing] the demands of the workplace with the needs of families"

and [allowing] employees to take reasonable leave for medical reasons." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) (citing 29 U.S.C. 2601(b)(1) & (2)). [4]

### B. FMLA Retaliation Claim

To establish a retaliation claim under the FMLA, Seymour must establish that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Parris v. Miami Herald*, 216 F.3d 1298, 1301(11th Cir. 2001). In order to establish that her termination decision was causally related to the protected activity, Seymour must present evidence that the decision maker was aware of the protected activity. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). Because Clements, the decision maker, testified he was unaware of Seymour's condition until after she was terminated, Mount Royal argues that Seymour cannot establish he was aware of any protected activity by Seymour.

---

[4] With respect to Seymour's interference claim, the Court notes that a genuine issue of material fact exists on the issue of whether the termination constituted interference with Seymour's FMLA rights. According to the testimony of Carpenter, Clements was sufficiently aware of Seymour's lump and related symptoms to put him on notice that she might request FMLA leave. A reasonable fact finder might determine that the insulin incident presented the perfect opportunity to terminate Seymour before she could request time off under the FMLA. A reasonable fact finder might also determine that Mount Royal's reasons for terminating Seymour were pre-textual, given the high blood sugar level of the co-worker involved in the insulin incident and the co-worker's request that Seymour administer the insulin injection.

While there is evidence that Clements was aware of Seymour's lump and related symptoms, she has failed to come forward with any evidence that Seymour engaged in protected activity. Rather, in her brief, Seymour merely cites to testimony that Lail was aware of Seymour's request for the FMLA forms and Celements was aware of her condition. (*See* Def's Ex. B, Seymour Dep. Vol. I at 36-38, 54-57; Seymour Dep. Vol. II at 10-14; Pl.'s Ex. G, Carpenter Dep. at 27, 30-32; Pl.'s Ex. H, Tucker Dep. at 48, 53, 56-7.) Nothing in the testimony upon which Seymour relies, however, indicates that Clements was aware Seymour had requested FMLA forms. Moreover, Seymour does not direct the Court to evidence that Lail was involved in the termination decision or made recommendation to Clements that he should terminate Seymour over the insulin incident. Without some evidence Clements was aware that Seymour attempted to assert her rights under the FMLA, her termination claim necessarily fails.

### III. CONCLUSION

For the reasons set forth above, the Court finds that summary judgment is due to granted on Seymour's retaliation claim, but denied with respect to her interference claim.

Done this 14th day of July, 2008.

_____
U.W. Clemon
United States District Judge